DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellant, David Travis, appeals from his conviction in the Medina County Court of Common Pleas. This Court affirms.
 I. {¶ 2} On December 16, 2005, Appellant, David Travis ("Travis"), was indicted by the Medina County Grand Jury on one count of rape, in violation of R.C. 2907.02(A)(1)(b), a felony of the first degree. Travis' case proceeded to trial before a jury on July 19, 2006. On April 27, 2006, Travis filed a motion in limine requesting that the trial court prohibit the State from introducing evidence of his prior conviction for gross sexual imposition and other acts evidence related to this *Page 2 
conviction. The trial court denied the motion. The jury returned a guilty verdict. On July 26, 2006, Travis was sentenced to ten years incarceration. In addition, Travis was deemed a sexual predator. Travis timely appealed his conviction, raising two assignments of error for our review. We have rearranged Travis' assignments of error to facilitate our review.
 II. ASSIGNMENT OF ERROR II "THE TRIAL COURT DENIED [TRAVIS] HIS DUE PROCESS RIGHTS AS THE CONVICTION FOR RAPE WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENDCE."
 {¶ 3} In his second assignment of error, Travis contends that the trial court denied his due process rights as his rape conviction was against the manifest weight of the evidence. We disagree.
 {¶ 4} "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at *1, citing State v. Thompkins (1997), 78 Ohio St.3d 380, 390 (Cook, J. concurring). When a defendant asserts that his conviction is against the manifest weight of the evidence,
 "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed *Page 3 
and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
 {¶ 5} This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id. A weight of the evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than it supports the other. Thompkins, 78 Ohio St.3d at 387. Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the evidence, the appellate court sits as the "`thirteenth juror'" and disagrees with the factfinder's resolution of the conflicting testimony. Id. at 388. quoting Tibbs v. Florida (1982),457 U.S. 31, 42. Therefore, this Court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Martin (1983),20 Ohio App.3d 172, 175. See, also, Otten, 33 Ohio App.3d at 340.
 {¶ 6} The jury convicted Travis of rape, in violation of R.C.2907.02(A)(1)(b), which provides in pertinent part that
 "(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:
 "(b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person."
Sexual conduct is defined under R.C. 2907.01(A) as *Page 4 
 "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse."
 {¶ 7} The State presented five witnesses including the victim, V.S., Dr. Kottler, Laura Samples, V.S.'s friend, J.M. and Detective Tadd Davis. Travis did not testify but presented four witnesses on his behalf.
 {¶ 8} V.S. testified that she was born on August 26, 1990. She testified that she currently resides at 119 Archer St. in Lodi, Ohio and that she has resided at this location since she was in the fourth grade. V.S. stated that Travis, a former police officer, moved into the same building in 2002. V.S. encountered Travis when she played outside with her cousins and sister. She also interacted with him through her home computer. In July 2002, Travis offered to teach V.S. to play the drums. V.S. testified that she was eleven years old at this time. V.S. walked over to Travis' apartment around lunchtime for her lesson. She testified that she had not been to the apartment since her friend moved out of it in 2001. Once inside, Travis led her downstairs to the basement where his drums were located. She removed her shoes when she got downstairs. V.S. testified that she saw the drum set and an odd-looking couch, which was actually a futon. Travis showed her how to play the drums and then he walked to the futon. V.S. told Travis she wanted to try the drums. He told her to wait. He then asked her to come over to him near the futon. When she walked over to him, he grabbed her by the arm and pushed *Page 5 
her onto the futon. V.S. sat on the edge of the futon. Travis then pushed her onto her back. V.S. testified that she resisted at first, but ultimately acquiesced because she felt there was nothing she could do about it. Travis positioned himself between her knees. He then put his hands under her shirt and touched her bra. V.S. tried to push him away. Travis unbuttoned her pants. V.S. resisted, repeatedly asking Travis if she could just play the drums. He did not respond to her request. Eventually, Travis pulled her pants down to her knees and moved on top of her to prevent her from escaping.
 {¶ 9} Once he had pinned her down, Travis pulled down his pants and attempted to penetrate V.S. with his penis. V.S. testified that Travis was unable to penetrate her. He then moved so that he could force his penis into her mouth. She shook her head to prevent him from placing it in her mouth but he ultimately put "a little bit" of it in her mouth. V.S. testified that she could not understand why Travis was doing this to her and that she was scared. She stated that she knew that what he was doing was wrong.
 {¶ 10} V.S. testified that Travis jumped off of her when he heard his roommate, Carl DeMell, make a noise upstairs. Travis told her to put her pants on and then proceeded upstairs. She quickly dressed and left. V.S. testified that she could not locate her underwear so she left without them. Once she arrived home, she took a shower because she felt "dirty" and then stayed in her bedroom. V.S. testified that she did not tell her parents because she did not want them to get mad. *Page 6 
Her parents were friends with Travis and his parents and she thought they might not believe her. V.S. testified that she talked with Travis online after the incident. She stated that she did not want Travis to "not be a friend anymore[.]"
 {¶ 11} On redirect, V.S. read a portion from her online diary ("Bloop diary") in which she provided a detailed explanation of the offense. She had also described a prior sexual offense Travis committed against her 12 year old friend. In the diary, V.S. stated that she had lied to the FBI regarding Travis' assault because she did not want her parents to know that he had raped her. V.S. testified that she had left out the description of Travis forcing his tongue into her mouth because she was too uncomfortable to discuss it on the witness stand.
 {¶ 12} V.S. also indicated in her diary that when the FBI came to her house to ask about the incident, she lied and stated that nothing had happened with Travis because she was scared that the FBI were at her house and that they had guns. She also testified that she did not want to talk about the incident in front of her parents. V.S. stated that she did not tell the police about the incident because she did not trust the police. She explained that she distrusted the police because Travis was a police officer in her town and she did not trust him. V.S. testified that she suffered from psychological problems as a result of the incident. She stated that she has sometimes cut herself.
 {¶ 13} Dr. Bruce Kottler also testified for the State. Dr. Kottler testified that V.S.'s mother brought her to see him as a patient in July of 2005 because V.S. *Page 7 
had been cutting herself. He met with V.S. twice. During these visits, V.S. disclosed to Dr. Kottler that Travis had sexually assaulted her. Dr. Kottler notified Medina County Jobs and Family Services. Dr. Kottler testified that in addition to the rape, V.S. informed him that sometime in 2004, Travis had grabbed her from behind a tree and fondled her. She also told him that Travis had purchased alcohol for her older sister and sexually abused the sister in return for the alcohol.
 {¶ 14} Dr. Kottler diagnosed V.S. with adjustment disorder with anxiety and depressed mood eating disorder. Dr. Kottler testified that it is not uncommon for children of V.S.'s age who have suffered abuse to have not disclosed this to their parents. Dr. Kottler did not think that V.S. was inventing stories to gain attention. He stated that V.S. refused to return to his office because he had disclosed her alleged abuse to county authorities. After Dr. Kottler referred the matter to county authorities, V.S. made a statement to the police regarding the incident.
 {¶ 15} Detective Tadd Davis of the Medina County Sheriffs Office investigated the rape and testified for the State. Det. Davis explained that V.S. clearly articulated the events surrounding the rape. He also stated that she was very hesitant and emotional when she discussed the actual details of the rape.
 {¶ 16} Det. Davis also interviewed Travis, who denied all V.S.'s accusations. Travis told Det. Davis that he could not think of a reason why V.S. might invent stories about him. Det. Davis testified that his investigation revealed *Page 8 
that Travis was not, contrary to his assertions, at work at the time V.S. alleged that the rape occurred.
 {¶ 17} J.M., V.S.'s friend who was the victim of Travis' earlier sexual offense, also testified. J.M. testified that she was a friend of V.S. She stated that she sometimes talked with Travis online and that she had met him through V.S. Some of these conversations concerned sexual matters. She testified that Travis touched her breasts both on top and underneath her clothes on more than one occasion. J.M. stated that this happened when she was 12 years old and that Travis knew that she was 12 years old. She admitted that she had "flashed" her chest to him on a dare. J.M. also testified that she talked with Travis on the computer after the assault. J.M. confirmed V.S.'s testimony that she had cut herself and would make herself vomit after eating.
 {¶ 18} Lodi Police Chief Steven Sivard testified on behalf of the defense. He stated that he interviewed V.S. on August 2, 2005. He read aloud for the jury the notes he had taken during this interview. Chief Sivard testified that he terminated Travis' employment with the Lodi Police Department in 2002 after he was indicted for a sexually oriented offense.
 {¶ 19} Travis' mother, Betty Travis, also testified for the defense. The bulk of her testimony concerned her recollection that she brought V.S. and V.S.'s mother, Laura, to Travis' apartment in late summer 2002 to see some work that she'd done there. She testified that V.S. was very excited to see the basement. *Page 9 
She indicated that the only time V.S. saw Travis' basement was when Mrs. Travis showed V.S. and her mother around the apartment.
 {¶ 20} Travis contests V.S.'s credibility, citing inconsistencies in her testimony and the statements in her diary. These inconsistencies concerned minor details of the incident such as (1) whether she threw her underwear or the underwear came off because she was kicking her legs during the rape, (2) whether Travis' roommate interrupted the rape when he came home or whether he actually came down the stairs to the basement and (3) whether she cried after the incident occurred. This Court will not overturn the trial court's verdict on a manifest weight challenge simply because the trier of fact chose to believe the State's witnesses.State v. Merryman, 9th Dist. No. 02CA008109, 2003-Ohio-4528, at ¶ 28.
 {¶ 21} There is significant evidence that Travis raped V.S., who was twelve years old at the time. V.S. testified that Travis inserted his penis into her mouth. We find in the record no justification for V.S. to have lied about this incident. She was clearly reluctant to share her story with anyone other than her friend. J.M.'s testimony demonstrates that Travis had intent, motive and a plan to commit this offense. Further, Travis' own witness rebutted his alibi that he was at work at the time the rape occurred.
 {¶ 22} Based on the evidence in the record, we cannot say that the jury clearly lost its way in finding Travis guilty of rape. Thus, the verdict was not *Page 10 
contrary to the manifest weight of the evidence. Accordingly, Travis' second assignment of error is overruled.
 ASSIGNMENT OF ERROR I "THE TRIAL COURT ERRED TO THE PREJUDICE OF [TRAVIS] BY DENYING [TRAVIS'] MOTION IN LIMINE AND PERMITTING THE INTRODUCTION OF EVIDENCE OF PRIOR ACTS BY [TRAVIS] IN CONTRAVENTION OF THE OHIO RULES OF EVIDENCE, AS SUCH EVIDENCE WAS MORE PREJUDICIAL THAN PROBATIVE AND BORE NO RELEVANCE TO THE CASE AT BAR, THUS DENYING [TRAVIS] A FAIR AND IMPARTIAL TRIAL."
 {¶ 23} In his first assignment of error, Travis argues that the trial court erred to his prejudice by denying his motion in limine and thereby permitting the introduction of evidence of his prior acts. He contends that the trial court permitted this evidence in contravention of the Ohio Rules of Evidence because this evidence was more prejudicial than probative and bore no relevance to this matter. We disagree.
 {¶ 24} We review the trial court's admission or exclusion of evidence for an abuse of discretion. State v. Apanovitch (1987),33 Ohio St.3d 19, 22. An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621. *Page 11 
 {¶ 25} Travis contests the trial court's admission of testimony of his prior bad acts from J.M., V.S., Chief Sivard, Betty Travis and Carl DeMell. With respect to J.M., Travis contends that the trial court abused its discretion in allowing her to testify regarding her encounter with him. Travis contends that there are no similarities in the prior bad act alleged by J.M. and the offense he allegedly committed against V.S.
 {¶ 26} The record reflects that prior to J.M.'s testimony at trial, Travis objected to her entire testimony as irrelevant and highly prejudicial. The Court permitted both parties to conduct voir dire of J.M. outside the presence of the jury. At the conclusion of voir dire, the trial court made the following ruling:
 "Evidence Rule 404(B), evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person — in this case, the Defendant Mr. Travis — in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
 "My understanding of the testimony of this witness is as follows: First, that she talked to Mr. Travis on the computer. That's the same as the victim — [V.S]. That after the event occurred, she spoke with him on the computer again. Then he spoke with her on the computer again, which is also similar to the act that we had in this particular case.
 "That this victim was twelve years old when the event occurred; that she is going to testify to — that is to say, the sexual abuse by Mr. Travis. In fact, the victim in this case — [V.S] — was twelve years old — or eleven years old when this occurred as well.
 "That he touched her breasts over her shirt, and then under her shirt. This is subsequently, and this is the same kind of act — at least a portion of the same kind of act that occurred with [V.S]. *Page 12 
 "* * *
 "The Court believes that this testimony of this witness is so intertwined with what occurred in this particular case, portions of it would have to come in in any event. The Court believes that there — and is going to order that no evidence of any other crime occurring — that is to say, the evidence of a conviction of a crime — from this witness should not occur.
 "However, the Court believes, * * *, that there is evidence here that would be relevant to show opportunity, intent, preparation, knowledge, plan, and identity."
 {¶ 27} The Court then brought in the jury and provided a limiting instruction, informing the jurors that evidence of other crimes or acts is inadmissible to prove character in conformity therewith but that in limited circumstances, such testimony is admissible to show opportunity, intent, preparation, plan, knowledge or identity of a person. The Court explained that the jury was limited to considering J.M.'s testimony regarding Travis' other acts only for these other purposes, not to show that he acted in conformity with any prior act.
 {¶ 28} We find no error in the trial court's admission of this testimony. This Court has held that evidence that a defendant sexually abused another victim in a similar manner is admissible to show a scheme, plan or system. State v. Clay, 9th Dist. No. No. 04CA0033-M,2005-Ohio-6, at ¶ 37; State v. Guenther, 9th Dist. No. 05CA008663,2006-Ohio-767, at ¶ 47. Here, J.M.'s testimony was admissible to prove Travis' motive, plan and scheme to commit rape against V.S. J.M.'s testimony was reasonably offered to prove Travis' motive to sexually abuse an 11 *Page 13 
or 12 year old girl. The way in which Travis touched J.M.'s breasts over her shirt and then under her shirt is the same way in which he touched V.S.'s breasts. In addition, both girls' relationships with Travis first involved communication on the computer. Under the circumstances, this Court finds that the trial court did not abuse its discretion when it admitted J.M.'s testimony regarding Travis' other acts to prove his motive, plan, scheme or opportunity to commit rape.
 {¶ 29} With regard to V.S., Travis argues that the trial court abused its discretion in permitting her to read part of her "bloop diary" into the record which contained references to Travis' other bad acts. He contends that the trial court erred in failing to give a limiting instruction regarding hearsay and other acts testimony.
 {¶ 30} The record reflects that Travis failed to request a limiting instruction with regard to this testimony. Crim.R. 30(A) provides in relevant part:
 "[A] party may not assign as error the giving or failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection. Opportunity shall be given to make the objection out of the hearing of the jury."
This Court has held that failure to request a limiting instruction at the time of the presentation of the other acts evidence, constitutes waiver of the issue for purposes of appeal. State v. Ditzler (Mar. 28, 2001), 9th Dist. No. 00CA007604, at *5. See also, State v. Davis (1991),62 Ohio St.3d 326, 339; State v. Perry (1992), 80 Ohio App.3d 78, 84. Herein, Travis failed to request a limiting instruction at the *Page 14 
time of the testimony in question. Hence, we conclude that the trial court's failure to give such an instruction at that time cannot now be assigned as error.
 {¶ 31} Travis contends that the trial court erred in allowing Chief Sivard to testify regarding Travis' termination from the Lodi Police Department. The record reflects that on cross-examination, the State questioned Chief Sivard about Travis' employment as a police officer in Lodi, where Chief Sivard was police chief from 1985 through the time of the trial. Chief Sivard incorrectly testified that Travis' employment was terminated in 2005 because of the indictment in the present case. The State then showed Chief Sivard court documents that indicated that Travis' employment was terminated in 2002. These documents were not shown to the jury. The trial court provided the following cautionary instruction with regard to Chief Sivard's testimony:
 "The police chief testified earlier on direct, or maybe it was on cross, that he thought he recalled that the Defendant in this case was terminated for an offense that was a lesser offense than what he was charged for.
 "The purpose of this examination is not — and you're not to consider it for any other purposes, except to show that the — to test the credibility, the observability, the correctness of the Police Chief of what occurred, as opposed to determining the character of the Defendant on the basis of any other previous charges or convictions."
 {¶ 32} Upon review, we find no abuse of discretion in the trial court's admission of this testimony. The State was permitted to impeach Chief Sivard by showing a specific contradiction. Under Evid.R. 616(C), "[f]acts contradicting a *Page 15 
witness's testimony may be shown for the purpose of impeaching the witness's testimony." Accordingly, the trial court did not abuse its discretion in permitting Chief Sivard to testify regarding Travis' termination, as evidence regarding the date of his termination was introduced to impeach Chief Sivard's testimony.
 {¶ 33} Travis argues that the trial court also abused its discretion in permitting Betty Travis and Carl DeMell to testify regarding his prior bad acts. However, the record reflects that the State only questioned these witnesses regarding the prior bad acts about which J.M. had already testified. We have already determined that this testimony was admissible. As such, we find no abuse of discretion in the trial court's admission of this testimony.
 {¶ 34} Accordingly, Travis' first assignment of error is overruled.
 III. {¶ 35} Travis' assignments of error are overruled. The judgment of the Medina County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal. We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into *Page 16 
execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
SLABY, P. J. DICKINSON, J. CONCUR
 *Page 1