DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellant, Nathaniel Stephens ("Stephens"), appeals from the decision of the Summit County Court of Common Pleas. This Court affirms.
 I. {¶ 2} Staci Smith ("Smith"), the victim in the instant case, was living with Stephens. The two had a child together. On March 25, 2006, Smith and Stephens had an argument. The argument resulted in Smith calling 911. Officer Richard Wallace ("Wallace") responded to the call. Smith informed Wallace that as she was attempting to leave the home, Stephens punched her in the chest, choked her, and pushed her down. She told Wallace that she was holding her two children at *Page 2 
the time. Wallace called paramedics who checked Smith's vital signs and determined that her injuries did not warrant emergency transportation to the hospital.
 {¶ 3} As a result of this incident, Stephens was charged with one count of domestic violence, in violation of R.C. 2919.25(A), a third degree felony, one count of domestic violence, in violation of R.C.2919.25(A), a first degree misdemeanor, two counts of endangering children, in violation of R.C. 2919.22(A), a first degree misdemeanor, and one count of unlawful restraint, in violation of R.C. 2905.03, a third degree misdemeanor. Stephens pled not guilty to these charges.
 {¶ 4} On February 15, 2007, a protective order was issued against Stephens. Under the protective order, Stephens was to have no contact with Smith or her children. Further, he was not permitted to enter Smith's residence. On May 16, 2007, an investigator with the Summit County Prosecutor's Office and the assistant prosecutor went to Smith's home to serve her with a subpoena for trial. A man answered the door at the home and identified himself only as the babysitter. The investigator suspected that the man was Stephens. After reviewing Stephens' photo in a file, the investigator confirmed that it was Stephens and called the police. The investigator and the assistant prosecutor waited outside the home until police arrived. During this time, they observed a second man arrive at the home. When police arrived and knocked on the door, the *Page 3 
second man answered the door. Stephens was not on the premises, but police discovered a rear exit. On May 21, 2007, a supplemental indictment was filed, charging Stephens with one count of violating a protection order, in violation of R.C. 2919.27, a first degree misdemeanor. Stephens pled not guilty to this charge.
 {¶ 5} On May 18, 2007, the State filed a notice of intent to use other acts evidence. On May 25, 2007, Stephens subpoenaed the assistant prosecutor to appear as a witness in the case. On June 4, 2007, the assistant prosecutor moved to quash the subpoena, contending that Stephens could not show a compelling need for her testimony. The trial court set a hearing on this motion. On June 11, 2007, Stephens filed a motion to disqualify the assistant prosecutor.
 {¶ 6} On June 13, 2007, prior to the trial, the trial court held a hearing regarding the other acts evidence, the motion to quash Stephens' subpoena of the assistant prosecutor, and Stephens' motion to disqualify the assistant prosecutor. The trial court quashed the subpoena, declined to disqualify the assistant prosecutor, and allowed into evidence the other acts evidence testimony. At the conclusion of the trial, the jury found Stephens guilty on all counts contained in the indictment. He was sentenced to three years incarceration on the domestic violence charge and all other sentences to be served concurrently. Stephens timely appealed his convictions, raising four assignments of error for our review.
 III. *Page 4 ASSIGNMENT OF ERROR I "THE TRIAL COURT ERRED IN FAILING TO CALL [THE ASSISTANT PROSECUTOR] AS A WITNESS, VIOLATING 
STEPHENS' CONSTITUTIONAL RIGHT TO COMPULSORY PROCESS OF WITNESSES ON HIS BEHALF."
 {¶ 7} In his first assignment of error, Stephens contends that the trial court erred in failing to call the assistant prosecutor as a witness, violating his constitutional right to compulsory process of witnesses on his behalf We do not agree.
 {¶ 8} It is difficult to determine whether Stephens' argument is directed at the trial court's grant of the State's motion to quash his subpoena of the assistant prosecutor or the trial court's implicit denial of his motion to disqualify the assistant prosecutor. We note that the trial court granted the State's motion to quash. Stephens' motion to disqualify was based on the assumption that the assistant prosecutor would be a witness in the case. Because it granted the State's motion to quash the subpoena, the court had no reason to find that the assistant prosecutor should be disqualified. As such, we will review whether the trial court abused its discretion when it granted the State's motion to quash the subpoena. See State v. List (Apr. 17, 1996), 9th Dist. No. 17341, at *3. An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, *Page 5 
an appellate court may not substitute its judgment for that of the trial court. Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621.
 {¶ 9} In the instant case, Stephens subpoenaed the assistant prosecutor, contending that she was the witness to a crime, i.e., the violation of a protective order. Stephens contends that it could be argued that the assistant prosecutor's testimony was inconsistent with the investigator's testimony and as such, could have been used to challenge the credibility of their identification of Stephens. The prosecution moved to quash the subpoena arguing "[w]here there is another person available to be a witness who can supply the information defendant seeks, then there is no compelling need to subpoena the prosecutor." We agree with the prosecutor's argument.
 {¶ 10} In List, we noted that "`[a]s a general rule federal courts refuse to permit a prosecutor to be called as a witness in a trial in which he is participating unless there is a `compelling need.'"List, supra, at *3, quoting United States v. Dupuy (C.A.9, 1985),760 F.2d 1492, 1498. We found this federal case law helpful and concluded that because there was another person who was present and who could testify to the incident in question that the prosecutor's testimony was not compelling. List, supra, at *3.
 {¶ 11} Stephens argues that the assistant prosecutor's testimony was inconsistent with the investigator's testimony. However, the inconsistency that Stephens addresses does not relate to whether the investigator identified Stephens *Page 6 
as the man he saw at Smith's house. Rather, it relates to which of the witnesses made the identification. The record reveals that the testimony is clear and consistent that both the investigator and the assistant prosecutor saw Stephens at Smith's house. Accordingly, because the investigator could testify to the issue, we find that the trial court did not err when it granted the prosecutor's motion to quash the subpoena. Therefore, Stephens' first assignment of error is overruled.
 ASSIGNMENT OF ERROR II "THE TRIAL COURT IN THIS CASE ERRED IN PERMITTING OTHER ACT[S] EVIDENCE OF PRIOR DOMESTIC VIOLENCE BETWEEN [STEPHENS] AND SMITH TO BE SUBMITTED TO THE JURY."
 {¶ 12} In his second assignment of error, Stephens contends that the trial court erred in permitting other acts evidence of prior domestic violence between Stephens and Smith to be submitted to the jury. We do not agree.
 {¶ 13} A trial court possesses broad discretion with respect to the admission of evidence. State v. Ditzler (Mar. 28, 2001), 9th Dist. No. 00CA007604, at *2, citing State v. Maurer (1984), 15 Ohio St.3d 239,265. An appellate court will not overturn the decision of a trial court regarding the admission or exclusion of evidence absent a clear abuse of discretion that has materially prejudiced the defendant.Ditzler, supra, at *2. See, also, State v. A H (Sept. 9, 1998), 9th Dist. No. 18841.
 {¶ 14} The Supreme Court of Ohio has articulated two requirements for the admission of other acts evidence. State v. Broom (1988),40 Ohio St.3d 277, 282. *Page 7 
First, substantial evidence must prove that the other acts were committed by the defendant as opposed to another person. Id. at 282. Second, the other acts evidence must fall within one of the theories of admissibility enumerated in Evid.R. 404(B). Id. at 282, see, also,State v. Lowe (1994), 69 Ohio St.3d 527, 530.
 {¶ 15} Evid. R. 404(B) provides that evidence of prior criminal acts completely independent of the crime for which a defendant is being tried may be admissible for purposes other than proving the conformity of an accused with a certain character trait exhibited during the incident in question. Specifically, Evid.R. 404(B) provides the following:
 "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." (Emphasis added).
 {¶ 16} Proof of one of the purposes set forth in Evid.R. 404(B) must go to an issue which is material in proving the defendant's guilt for the crime at issue. State v. DePina (1984), 21 Ohio App.3d 91, 92, citing State v. Burson (1974), 38 Ohio St. 2d 157, 158. We have determined that other acts evidence against the same victim is admissible in a domestic violence case to prove intent. State v.Blonski (1997), 125 Ohio App.3d 103, 113. "However, when using `other acts' evidence, to show the defendant's intent, the offense for which the defendant is being tried and the other act must have occurred reasonably near to each other and *Page 8 
a similar scheme, plan, or system must have been utilized to commit the offense at issue and the other offenses." Blonski,125 Ohio App.3d at 113, citing State v. Elliott (1993), 91 Ohio App.3d 763, 771.
 {¶ 17} We first note that Stephens' pled guilty to all the other acts of which he is complaining. As such, the first requirement under theBroom test is satisfied. Next we look to Evid.R. 404(B). A review of the record shows that the events all occurred within five years prior to the incident in question. We find that the other acts and the instant incident occurred "reasonably near to each other[.]" Blonski,125 Ohio App.3d at 113; See, also, State v. Partee, 9 Dist. No. 23643,2007-Ohio-5114, at ¶ 12 (finding no error in the admission of other acts that occurred 12 years prior); State v. Roper, 9th Dist. No. 22566,2005-Ohio-6327, at ¶ 11 (finding no error in the admission of other acts evidence that occurred over a span of 27 years prior to the incident at trial).
 {¶ 18} We further find that the other acts testimony clearly showed a similar scheme, plan or system. Blonski, 125 Ohio App.3d at 113, citing,Elliot, 91 Ohio App.3d at 771. In the instant case, officers responding to the scene testified that Smith informed them that Stephens had punched her in the chest, grabbed her by the throat and choked her. She also stated that she had been holding both of her children who were jostled during the fight. The officers testified that Smith indicated that the two had been arguing prior to the physical fight. Several officers and Smith testified to statements Smith made to the police *Page 9 
regarding other acts of domestic violence that occurred on June 20, 2002, October 26, 2002, February 26, 2003, and December 26, 2004. On June 20, 2002, Smith informed Officer Michael Williams that Stephens choked her and she signed a domestic violence complaint with regard to the incident. On October 26, 2002, a pregnant Smith called the police and informed responding officer Todd Hough that after a fight, Stephens had choked her and punched her. On February 26, 2003, Smith, who was still pregnant, reported an incident of domestic violence. Officer Robert Swain responded to the call. He testified that he discovered that there was a temporary protection order in place at the time from a prior incident of domestic violence. While Officer Swain was interviewing Smith, Stepehens called her and threatened to harm her. On December 26, 2004, Smith informed responding officer Brian French that Stephens had punched her in the face and choked her.
 {¶ 19} These previous incidents show a consistent pattern of domestic violence against Smith. The incidents involve choking and punching. The instant charge of domestic violence was brought because Smith reported to police that Stephens choked and punched her. As such, we cannot say that the trial court abused its discretion when it admitted the other acts testimony. Accordingly, Stephens' second assignment of error is overruled.
 ASSIGNMENT OF ERROR III *Page 10 "THE COURT ERRED IN SUSTAINING OBJECTIONS TO [STEPHENS'] QUESTIONS OF [SMITH] ASKING WHETHER SHE INITIATES FIGHTS WITH [STEPHENS]."
 {¶ 20} In his third assignment of error, Stephens contends that the trial court erred in sustaining objections to his questions of Smith asking whether she initiates fights with him. This argument is without merit.
 {¶ 21} Again, a trial court possesses broad discretion with respect to the admission of evidence. Ditzler, supra, at *2, citingMaurer, 15 Ohio St.3d at 265. Therefore, we review Stephens' third assignment of error for an abuse of discretion.
 {¶ 22} In the instant case, Stephens attempted to question Smith about whether she had initiated the fights that led to the previous domestic violence charges. The trial court sustained the State's objections to this line of questioning. He argues that this was in error because
 "[w]hether Ms. Smith started the fights and 
Stephens was acting in self-defense would have presented the defense with the option to argue self-defense in this case. If on this date in question Ms. Smith acknowledged that she started a physical fight with Stephens, a jury could have found Stephens not guilty by reason of self-defense if he were acting to protect himself."
 {¶ 23} In sum, Stephens argues that the trial court did not let him pursue the defense of self-defense. We do not agree.
 {¶ 24} We first note that Stephens pled guilty to all the prior instances of domestic violence. "`A defendant who enters a voluntary plea of guilty while represented by competent counsel waives all nonjurisdictional defects in prior *Page 11 
stages of the proceedings.'" Ross v. Common Pleas Court of AuglaizeCty. (1972), 30 Ohio St.2d 323, 323, quoting Crockett v. Haskins (C.A.6, 1966), 372 F.2d 475, 476. By pleading guilty to these prior instances, Stephens waived any claim of self-defense that he may have had in those instances. As such, we find that the trial court did not abuse its discretion when it did not permit Smith to testify as to whether she started the fights with regard to the other acts.
 {¶ 25} Further, Stephens cannot show that any prejudice occurred as a result of the trial court's ruling. Stephens argues that the trial court's ruling kept testimony from the jury that would have allowed it to find him not guilty by reason of self-defense. A review of the transcript shows otherwise. The jury heard the following exchange between Stephens' counsel and Smith.
 "Q: [W]hat happened on March 25th, 2006? Did Mr. Stephens choke you on that day?
 "A: I really don't know.
 "Q: Did you start a fight with Mr. Smith on that day, Mr. Stephens on that day?
 "A: I don't know. It's just black, I don't know.
 * * *
 "A: I remember being at the corner store and calling the police, but I don't remember what he said to me that set me off or I just — I don't recall and I've been trying and then I've been reading the statements and it's just not making sense in my brain, like, what happened. * * *
 "Q: It's your testimony today that it doesn't make sense for him to choke and punch you; correct? *Page 12 
 "A: No. I mean, that's usually not, you know, I don't — we don't just sit down and watch TV and then he just start choking me. It's — I think I can — I try to be nice to myself and say overreacted."
 "Q: What do you mean by "nice to yourself?
 "A: Because I'm trying to, you know, not put it out there like I'm like psychotic or something because I don't think, but, like just overreacting.
 "Q: Overreacting so much that you started a fight with Mr. Stephens on that day; correct?
 "A: I'm not going to say that's incorrect because I could have."
It is clear from this exchange that the jury heard testimony that Smith may have started the fight that led to the physical violence. Accordingly, the trial court did not prevent Stephens from asserting the affirmative defense of self-defense by preventing him from questioning her about whether she had initiated the fights in the past.
 {¶ 26} As such, Stephens' third assignment of error is overruled.
 ASSIGNMENT OF ERROR IV "THE CONVICTIONS OF [STEPHENS] ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 27} In his fourth assignment of error, Stephens argues that his convictions are against the manifest weight of the evidence. We do not agree.
 {¶ 28} When a defendant asserts that his conviction is against the manifest weight of the evidence,
 "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the *Page 13 
evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
 {¶ 29} This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
 {¶ 30} We first note that the only conviction Stephens argues was against the manifest weight of the evidence is that of domestic violence. Accordingly, we will limit our discussion to this conviction.
 {¶ 31} Under R.C. 2919.25(A), "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." A family or household member includes, but is not limited to, "[t]he natural parent of any child of whom the offender is the other natural parent or is the putative other natural parent." R.C. 2919.25(F)(1)(b). It is undisputed that Smith and Stephens have a child in common.
 {¶ 32} In the instant case, the jury heard testimony from Smith, Officer Richard Wallace, and paramedic Daniel DeLuca. Smith testified that she did not recall the incident. The assistant prosecutor sought and was permitted to treat Smith as an adverse witness. Smith read the written statement that she had prepared on March 25, 2006, immediately following the incident. She testified that the statement was in her handwriting and that it contained her signature. Smith read the statement to the jury. *Page 14 
 "`[Stephens] was upset with me and he punched me in the chest after I told him I was leaving, he grabbed me by the throat and choked me. I struggled several times to get away and was defeated by him overpowering me with choking.
 "* * *
 "`And pushing me down. I had both children in my arms trying to get out of the house and he would push me down while I was holding them. I thought he would stop because of that, but it didn't seem to matter who he hurt, my children were bumped around secondarily from the abuse that was initially initiated by [Stephens].'"
 {¶ 33} Smith explained on cross-examination that when she gets angry, she blacks out. She explained that she does not pass out, but she can not remember the specifics or details of the event that made her angry. She testified that she could not say anything with certainty about the events that occurred on March 25, 2006.
 {¶ 34} The jury next heard from Officer Wallace. Officer Wallace testified that he responded to the domestic violence call on March 25, 2006. Officer Wallace stated that when he arrived on the scene, Smith was "crying and stating that her chest hurt her." He testified that "[i]t was a sobbing-type cry." He also explained that she was shaken and upset. Officer Wallace testified that Smith informed him that "she was trying to leave the house with her two kids and [Stephens] punched her in the chest and choked her and pushed her down." Smith also informed Officer Wallace that she was holding her two children at the time of the incident. Officer Wallace indicated that he did not observe any visible injuries on Smith, but that he called the paramedics because she was complaining of chest *Page 15 
pain. He also stated that he did not observe any injuries on the children. According to Officer Wallace, the paramedics checked Smith on the scene and then referred her to the hospital of her choice. Officer Wallace testified that he took Smith's statement and Smith indicated that she wanted to pursue charges. He explained that he signed the charges on Smith's behalf because she could not leave her home because of her children. Officer Wallace testified to the authenticity of the witness statement that Smith had read during her testimony. He also explained that she made the statement willingly. Officer Wallace testified, with no objection from the defense, that he believed Smith was telling him the truth on March 25, 2006.
 {¶ 35} Paramedic DeLuca also testified for the State. He explained that on March 25, 2006, he was summoned by the police to Smith's home. He stated that he was responding to a report of a female injured in a domestic violence dispute. DeLuca testified that Smith's chief complaint was chest pain and dizziness. According to DeLuca, Smith informed him that she was "`assaulted by a male she knows. States she was punched once in the chest. States she was also choked, no loss of consciousness, was dizzy after that accident, not currently dizzy and has transportation to the Emergency Department.'" He explained that her injuries were not significant enough to warrant an ambulance ride to the hospital, but that she could seek treatment on her own. *Page 16 
 {¶ 36} We find that the evidence indicates that Stephens punched and choked Smith. In light of the other acts testimony regarding prior domestic violence between Smith and Stephens, we find that this is not a case where the evidence weighs heavily in favor of Stephens, meriting a new trial. Therefore, Stephens' conviction for domestic violence was not against the manifest weight of the evidence. Accordingly, Stephens' fourth assignment of error is overruled.
 III. {¶ 37} Stephens' assignments of error are overruled and the judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this *Page 17 
judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
CARLA MOORE FOR THE COURT
 SLABY, J. WHITMORE, J. CONCUR *Page 1