DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Defendant/Appellant, Frank D. Vinson, appeals his conviction for domestic violence, violation of a protection order, and intimidation of a crime victim or witness in the Summit County Court of Common Pleas. We affirm.
 {¶ 2} On April 24, 2007, Defendant was indicted for one count of domestic violence in violation of R.C. 2919.25(A), a third-degree felony; one count of violating a protection order in violation of R.C.2919.27, a first-degree misdemeanor; and one count of intimidation of crime victim or witness in violation of R.C. 2921.04(A), a first-degree misdemeanor, for conduct occurring *Page 2 
between April 12, 2007, and April 18, 2007, against Melody Grant. On September 5, 2007, Defendant was convicted by a jury on all counts and on October 29, 2007, was sentenced to five years imprisonment. Defendant timely appealed his conviction and raises four assignments of error.
 Assignment of Error I "[Defendant] was denied a fair trial when the trial court permitted other acts evidence to be introduced at trial."
 Assignment of Error II "Defendant was denied a fair trail when the trial court admitted [Defendant's] misdemeanor convictions."
 {¶ 3} Defendant argues that he was denied a fair trial because the trial court admitted evidence in violation of Evid.R. 403(B), 404(B), and 609. Specifically, Defendant asserts that the trial court erred when it admitted: (1) testimony about other acts of domestic violence when Defendant had already stipulated to two prior domestic violence convictions; (2) testimony about domestic violence convictions (misdemeanors or fifth-degree felonies) that were not punishable by more than one year in prison; and (3) testimony about other acts that occurred more than ten years ago. The State contends that the trial court properly determined, at a hearing specifically held to address this issue, that the other acts were admissible under Evid.R. 404(B) to "show a system and a mode of operation that this man uses[.]" *Page 3 
 {¶ 4} We initially note that our review is limited to whether the trial court incorrectly overruled Defendant's objections to the other acts testimony at trial, rather than the trial court's conclusion at the other acts hearing that the evidence was admissible. State v.Webber (Aug. 23, 2000), 9th Dist. No. CA3001-M, at *4, citing Pena v.Northeast Ohio Emergency Affiliates, Inc. (1995), 108 Ohio App.3d 96,108 and Regec v. Johnson (Mar. 31, 1995), 9th Dist. No. 15838, at 6. "`The Ohio Supreme Court has stated that a `motion in limine is tentative and precautionary in nature, reflecting the court's anticipatory treatment of an evidentiary issue at trial. In deciding such motions, the trial court is at liberty to change its ruling on the disputed evidence in its actual context at trial.''" Webber at *4, quoting Defiance v. Kretz (1991), 60 Ohio St.3d 1, 4.
 {¶ 5} "We review the trial court's admission or exclusion of evidence for an abuse of discretion." State v. Travis, 9th Dist. No. 06CA0075-M,2007-Ohio-6683, at ¶ 24, citing State v. Apanovitch (1987),33 Ohio St.3d 19, 22. "An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling." Travis at ¶ 24, citing Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219. In applying the abuse of discretion standard, the appellate court does not substitute its judgment for that of the trial court. Pons v. Ohio State Med. Bd.
(1993), 66 Ohio St.3d 619, 621.
 {¶ 6} "The Supreme Court of Ohio has articulated two requirements for the admission of other acts evidence. First, substantial evidence must prove that *Page 4 
the other acts were committed by the defendant as opposed to another person. Second, the other acts evidence must fall within one of the theories of admissibility enumerated in Evid.R. 404(B)." (Internal citations omitted). State v. Stephens, 9th Dist. No. 23845,2008-Ohio-890, at ¶ 14, citing State v. Broom (1988), 40 Ohio St.3d 277,282. See also, State v. Lowe (1994), 69 Ohio St.3d 527, 530.
 {¶ 7} As we stated in State v. Roper, 9th Dist. No. 22566,2005-Ohio-6327, judgment reversed on other grounds:
 "Generally, evidence of prior criminal acts completely independent of the crime for which a defendant is being tried, is inadmissible. State v. Wilkins (1999), 135 Ohio App.3d 26, 29, 732 N.E.2d 1021, citing State v. Thompson (1981), 66 Ohio St.2d 496, 497, 422 N.E.2d 855. However, an exception to this general rule exists, as provided for in R.C. 2945.59 and Evid.R. 404(B). [State v. Ali (Sept. 9, 1998), 9th Dist. No. 18841]. Evid.R. 404(B) provides that evidence of such crimes, wrongs or acts may be admissible for purposes other than proving the conformity of an accused with a certain character trait during the incident in question. Specifically, Evid. R. 404(B) provides the following:
 "`Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.'
 "R.C. 2945.59 reads:
 "`In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are *Page 5 contemporaneous with or prior or subsequent thereto, not[w]ithstanding that such proof may show or tend to show the commission of any other crime by defendant.]'" (Emphasis sic.) Roper at ¶ 8.
We further noted that:
 "[T]the standard for determining admissibility of such evidence is strict, and the statute section and rule must be construed against admissibility. Ali, supra, citing [Broom, 40 Ohio St.3d at paragraph one of the syllabus.] However, this strict admissibility standard must be considered contemporaneously with the fact that the trial court `occupies a "superior vantage" in determining the admissibility of evidence' Ali, supra, citing State v. Rutledge (Nov. 19, 1997), 9th Dist. No. 96CA006619." Roper at ¶ 9.
 {¶ 8} There is no dispute that the other acts at issue were committed by Defendant. Thus, the first prong of Broom is satisfied. The following other acts evidence was admitted under Evid.R. 404(B), over the objection of defense counsel, purportedly to "show a system, a mode of operation that [Defendant] uses":
1. Sergeant Williams testified that he responded to a domestic disturbance on March 7, 1993, at 1332 Brittain Road, between Defendant and the mother of his children, Yolanda Fletcher, in which Fletcher alleged that Defendant threw a phone through a window and choked her. Defendant was arrested for domestic violence, intoxication, and contempt. Defendant was convicted of domestic violence, a first-degree misdemeanor, as evidenced by a journal entry admitted into evidence. Williams reviewed past paperwork to refresh his *Page 6 
recollection prior to testifying and knew of no connection between the 1993 incident and the current case.
2. Officer Kulick testified that he responded to a domestic violence call on May 5, 1995, between Defendant and Fletcher, in which Fletcher alleged that Defendant elbowed her because she refused to co-sign a car loan for Defendant. Defendant was arrested for domestic violence, pled guilty, and was convicted of domestic violence menacing, a fourth-degree misdemeanor, as evidenced by a journal entry admitted into evidence. Kulick reviewed past paperwork to refresh his recollection prior to testifying.
3. Officer Pozuc testified that he responded to an incident on November 11, 1995, at Rocky's Skating Rink, between Defendant and Defendant's mother, Fairy Vinson, in which Ms. Vinson alleged that Defendant threw a plastic bucket at her but hit and broke a glass door instead. Witnesses to the incident also indicated that Defendant tried to choke Ms. Vinson. Defendant was arrested for domestic violence, pled guilty, and was convicted of a fourth-degree misdemeanor, as evidenced by a journal entry admitted into evidence. Pozuc reviewed past paperwork to refresh his recollection prior to testifying.
4. Sergeant Congrove testified that he responded to a domestic violence incident on August 17, 1996, at 970 Cordova, between Defendant and Fletcher, in which Fletcher alleged that Defendant hit her in the head with a phone. Defendant was arrested for domestic violence and convicted of a first-degree misdemeanor, *Page 7 
as evidenced by the journal entry admitted into evidence. Congrove reviewed past paperwork to refresh his recollection prior to testifying.
5. Officer Webb testified that he responded to a domestic violence call on July 15, 2005, at 394 Wildwood Avenue, between Melody Grant and Defendant, in which Grant alleged that Defendant punched and kicked her after she refused to give him $5.00. Defendant was arrested for domestic violence, pled guilty, was convicted of a third-degree felony, and sentenced to one year of incarceration, as evidenced by a journal entry admitted into evidence. Webb reviewed past paperwork to refresh his recollection prior to testifying.
6 Melody Grant, the victim in this case, testified during direct examination about the incident about which Webb had testified. Grant alleged that Defendant pushed and kicked her because she did not have money to give him to purchase crack cocaine. Grant testified that Defendant was convicted of domestic violence for this incident.
7. Grant summarized a portion of a recorded telephone call between herself and Defendant that was played for the jury. Grant indicated that the conversation referred to a "beating" she got from Defendant in September after Defendant, who was intoxicated, accused her of cheating on him. Grant explained that she did not call the police as a result of this incident although she was "beat up real bad" and it took "three months to get [her] face back in order." *Page 8 
8. Detective King testified that she investigated a complaint made on August 6, 1997, from 513 Zahn Drive, in which Fletcher alleged that Defendant beat her up and sexually assaulted her. Defendant was arrested and later pled guilty to, and was convicted, of domestic violence and gross sexual imposition, as evidenced by a journal entry admitted into evidence. Webb reviewed past paperwork to refresh his recollection prior to testifying.
 {¶ 9} As noted above, the trial court ruled that the other acts evidence was admissible under Evid.R. 404(B) to "show a system and a mode of operation that this man uses[.]" We agree that this evidence is admissible under Evid.R. 404(B) but on other grounds set forth inRoper and Evid.R. 404.
 {¶ 10} Defendant claimed that Grant's injury was an accident and that she was injured when the two of them were struggling over a bottle of wine. Defendant testified that, "[Grant] wouldn't let [the bottle of wine] go and she pulled it this way, I pulled it that way and finally I let it go and she fell over the crate." Defendant testified that Grant must have cut her leg when she accidentally fell because he did not hit her or otherwise cause the cut. "Based on Defendant's contentions [that Grant was accidentally injured], we cannot conclude the trial court abused its discretion by permitting prior acts evidence regarding Defendant's history of domestic violence" to suggest that Grant's injuries were not an accident. Roper at ¶ 13. *Page 9 
 {¶ 11} As to Defendant's contention that some of the other acts were inadmissible because they occurred more than ten years prior to the incident at issue, we hold "that the other acts and the instant incident occurred `reasonably near to each other[.]'" State v. Stephens, 9th Dist. No. 23845, 2008-Ohio-890, at ¶ 17, quoting State v. Blonski
(1996), 125 Ohio App.3d 103, 113. See, also, State v. Partee, 9th Dist. No. 23643, 2007-Ohio-5114, at ¶ 12 (finding no error in the admission of other acts that occurred 12 years prior); Roper at ¶ 11-12 (finding no error in the admission of other acts evidence that occurred over a span of 27 years prior to the incident at trial because "intent, purpose and knowledge are elements of several of the crimes charged," thereby making the other act evidence "particularly relevant." Id. at ¶ 12). The other acts testimony here shows intent and knowledge and clearly shows absence of a mistake or accident. See Roper at ¶ 13.
 {¶ 12} We also note that the trial court gave the jury limiting instructions on how they could consider the other acts evidence. During trial, the trial court instructed the jury as follows:
 "[The other acts evidence] was received * * * to show that [Defendant] committed the prior acts of domestic violence, but you may not consider this evidence — and this is the limitation now that I'm giving you on your consideration of this evidence — you may not consider the evidence to prove the character of this defendant in order to show conformity and accordance with that character in the case before you. *Page 10 
 * * *
 "[Y]ou can consider it for the purpose of exploring, analyzing, determining his motive and his method of operation in this case."
 {¶ 13} At the close of trial, the trial court instructed:
 "[Concerning the prior acts evidence, evidence was received that the defendant committed prior acts of domestic violence. You may not consider the evidence presented to prove the character of the defendant in order to show conformity in accordance with that character in the case before you."
 {¶ 14} Based on the foregoing, we do not find that Defendant was prejudiced in any way when the trial court permitted the testimony of other acts witnesses. Defendant's first and second assignments of error are overruled.
 Assignment of Error III "The trial court denied [Defendant] a fair trial by not permitting him to impeach the victim's testimony."
 {¶ 15} Defendant asserts (and the record supports) that Grant admitted at trial that she lied under oath about where she lived at the time of the incident. Defendant maintains that because Grant lied, he should have been permitted to impeach her trial testimony pursuant to Evid.R. 613. Specifically, Defendant argues that the trial court erred when it (1) improperly sustained the State's objections to questions about Grant's criminal history (including domestic violence); and (2) would not allow audio tapes of voicemails Grant left for Defendant that established her "motive to fabricate."
 {¶ 16} As noted above, "[w]e review the trial court's admission or exclusion of evidence for an abuse of discretion." Travis at ¶ 24, citing Apanovitch, *Page 11 33 Ohio St.3d at 22. Evid. R. 613(B) allows for the impeachment of a witness with a prior inconsistent statement. Grant admitted to lying under oath about where she lived. Accordingly, there was no need to impeach Grant's prior statement as to her address at the time of the crime. Moreover, evidence about Grant's criminal background and motive to fabricate would not have contradicted Grant's previous statements about her residence. Instead, it is Evid.R. 608 that is applicable to our analysis. Evid.R. 608 states:
 "(A) Opinion and reputation evidence of character
 "The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject only to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.
 "(B) Specific instances of conduct
 "Specific instances of conduct of a witness, for the purpose of attacking or supporting the witnesses's character for truthfulness, other than conviction of crime as provided in Evid.R. 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if clearly probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness's character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness of another witness[.]"
 {¶ 17} We initially note that there is nothing in the record to establish that Grant has been convicted of a crime, thereby implicating Evid. R. 609. Moreover, the questions posed by defense counsel about Grant's alleged convictions for domestic violence, resisting arrest, and disorderly conduct, do not go to her *Page 12 
character for truthfulness or untruthfulness and are inadmissible under Evid. R. 608(A) and (B). The trial court properly sustained the State's objection to questions related to Grant's alleged criminal history.
 {¶ 18} As to the voicemails left by Grant on Defendant's cell phone, Defendant asserted at trial that the calls were relevant to show: (1) the volatile relationship between Defendant and Grant; (2) Grant's noticeable intoxication when she testified that she did not drink; and (3) Grant's state of mind after the incident. The trial court disallowed the evidence, finding Grant's state of mind four months after the incident not relevant to the conduct in April of 2007. Defense counsel then proffered the tapes for the record.
 {¶ 19} We initially note that although Defendant's appellate brief argues that the voicemail evidence demonstrated Grant's motive to fabricate, defense counsel did not specifically make such an argument to the trial court. However, as evidence of Grant's state of mind could relate to a motive to fabricate or bias, we have listened to the audio tapes to determine if the trial court erred in excluding them.
 {¶ 20} In United States v. Abel (1984), 469 U.S. 45, "the Court explained that `bias' is a term used in the law to describe the relationship between a party and a witness which might cause the witness to slant or alter her testimony in favor of [or] against the party."State v. Lavery (Oct. 24, 2001), 9th Dist. No. 20591, at *6, citingAbel, 469 U.S. at 52. "Bias may be induced by a witness'[s] *Page 13 
like, dislike, or fear of a party, or by the witness'[s] self-interest. Proof of bias is almost always relevant because the jury and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness'[s] testimony. "Abel, 469 U.S. at 52.
 {¶ 21} After a review of the audio tape, we find that although there was a relationship between Defendant and Grant, the voicemails have no relevance to Defendant's domestic violence charge, except to bolster the State's case, and do not demonstrate bias. Specifically, the proffer does not demonstrate how Grant's relationship with Defendant might have led Grant to slant or fabricate her testimony against Defendant. See, id. Rather, the voicemails simply demonstrated that Grant was angry because Defendant beat her, because Defendant's family was calling and harassing her, and because she could not get her possessions from Defendant's apartment, the latter two events which occurred after the incident at issue in this case. For the foregoing reasons, we hold that the trial court did not abuse its discretion by sustaining the State's objection to the admission of the voicemail tapes and refusing to admit them.
 {¶ 22} Defendant's third assignment of error is overruled.
 Assignment of Error IV "The trial court erred by admitting only excerpts of recorded conversations."
 {¶ 23} In his final assignment of error, Defendant asserts that the trial court erred when it allowed, over objection, the State to play only portions of recorded *Page 14 
conversations between Grant and the incarcerated Defendant during Grant's direct examination. The conversations took place between April 13-19, 2007, and on June 12, 2007. Defendant maintains that "the excerpts selected were taken out of context and were most likely excerpts that most favored the State" and, therefore, denied Defendant "the opportunity to have his case fully evaluated and considered by the jury and a fair trial." After the CDs were played, Gilbert testified that she and Defendant discussed the current incident during these calls and that Defendant "wanted [her] to come down and say that [the] incident didn't happen" and to refuse to cooperate with the prosecution. Gilbert acknowledged that the recordings indicate that she had been amenable to trying to help Defendant at one point and even told him she would not appear to testify.
 {¶ 24} Defendant objected to the phone calls at the time they were played for the jury. The trial court overruled the objection, but indicated that defense counsel might play the entire phone call during cross-examination of Grant "if it's necessary." "The Ohio Supreme Court has explained that `Evid.R. 103(A)(2) requires an offer of proof in order to preserve any error in excluding evidence, unless the excluded evidence is apparent in the record.'" State v. Barrios, 9th Dist. No. 06CA009065, 2007-Ohio-7025, at ¶ 8, quoting State v. Brooks (1989),44 Ohio St.3d 185, 195. Here, the transcript reveals that Defendant "failed to proffer to the trial court [the complete content of the CD calls] and how it would have been relevant and material to the defense."Brooks, 44 Ohio St.3d at 195. *Page 15 
Moreover, Defendant did not attempt to play any of the phone calls during his cross-examination of Grant, thereby challenging the trial court's temporary ruling. Finally, defense counsel did not object to the admission of the phone calls into evidence at the close of the State's case-in-chief. Accordingly, Defendant has failed to preserve this issue for appeal.
 {¶ 25} Defendant's fourth assignment of error is overruled.
 {¶ 26} Each of Defendant's assignments of error is overruled and the judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this *Page 16 
judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
 WHITMORE, J. MOORE, P. J. CONCUR *Page 1