DECISION AND JOURNAL ENTRY
{¶ 1} Appellant/Defendant Marcus Morrow appeals his conviction in the Summit County Court of Common Pleas. We affirm.
 {¶ 2} On April 24, 2007, Defendant was indicted on one count of domestic violence in violation of R.C. 2919.25(A), a fourth-degree felony, for conduct against Teliah Varner on February 12, 2007, and one count of domestic violence in violation of R.C. 2919.25(A), a fourth-degree *Page 2 
felony, for conduct against Varner in June 2006. On July 18, 2007, Defendant was supplementally indicted for one count of violating a protection order in violation of R.C. 2929.27, a first-degree misdemeanor; one count of illegal use or possession of drug paraphernalia in violation of R.C. 2925.14(C)(1), a fourth-degree misdemeanor; one count of possession of marijuana in violation of R.C. 2925.11(A), a minor misdemeanor; and one count of open container in violation of R.C. 4301.62, a minor misdemeanor. Defendant pled guilty to the charges in the supplemental indictment and the State dismissed the second count of domestic violence as contained in the April 24, 2007 indictment. On October 18, 2007, the matter proceeded to trial and Defendant was convicted by a jury on the sole count remaining, domestic violence. On October 22, 2007, the trial court sentenced Defendant to a term of six months of incarceration on the domestic violence conviction, 180 days for the violating the protection order, and 30 days for illegal use or possession of drug paraphernalia. The sentences were to be served concurrently.
 {¶ 3} Defendant timely appealed his conviction and raises three assignments of error.
 Assignment of Error No. I "The trial court erred in allowing testimony as to other acts and evidence pertaining to other acts therefore denying [Defendant] due process and equal protection under the Constitution of the United States and of Ohio."
 {¶ 4} In his first assignment of error, Defendant asserts that the trial court erred when it allowed, over objection, testimony about prior acts of domestic violence against Varner that occurred in 2001, and on June 13, 2007[1]. Defendant maintains that the other acts evidence *Page 3 
should not have been admitted because it does not fit within any of the exceptions set forth in Evid. R. 404(B) and is unfairly prejudicial, as prohibited by Evid. R. 403.
 {¶ 5} The State maintains: (1) that the trial court properly allowed the evidence because it is admissible under Evid. R. 404(B); (2) the trial court properly instructed the jury as to the limited use of the other acts evidence and it is presumed that the jury followed the instructions of the court; (3) if there was error in admitting the evidence, it was harmless given the substantial other evidence at trial as to Defendant's guilt; (4) Defendant forfeited his objection by cross-examining the witnesses who testified about the other acts; and (5) the other acts testimony was not prejudicial to Defendant and, in fact, was helpful to him.
 {¶ 6} "We review the trial court's admission or exclusion of evidence for an abuse of discretion." State v. Travis, 9th Dist. No. 06CA0075-M,2007-Ohio-6683, at ¶ 24, citing State v. Apanovitch (1987),33 Ohio St.3d 19, 22. "An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling." Travis at ¶ 24, citing Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219. In applying the abuse of discretion standard, the appellate court does not substitute its judgment for that of the trial court. Pons v. Ohio State Med. Bd.
(1993), 66 Ohio St.3d 619, 621.
 {¶ 7} "The Supreme Court of Ohio has articulated two requirements for the admission of other acts evidence. First, substantial evidence must prove that the other acts were committed by the defendant as opposed to another person. Second, the other acts evidence must fall within one of the theories of admissibility enumerated in Evid. R. 404(B)." (Internal citations omitted). State v. Stephens, 9th Dist. No. 23845,2008-Ohio-890, at ¶ 14, citing State v. Broom (1988), 40 Ohio St.3d 277,282. See also, State v. Lowe (1994), 69 Ohio St.3d 527, 530.
 {¶ 8} We held in State v. Roper, 9th Dist. No. 22566, 2005-Ohio-6327
that: *Page 4 
 "Generally, evidence of prior criminal acts completely independent of the crime for which a defendant is being tried, is inadmissible. State v. Wilkins (1999), 135 Ohio App.3d 26, 29, 732 N.E.2d 1021, citing State v. Thompson (1981), 66 Ohio St.2d 496, 497, 422 N.E.2d 855. However, an exception to this general rule exists, as provided for in R.C. 2945.59 and Evid. R. 404(B). [State v. Ali (Sept. 9, 1998), 9th Dist. No. 18841]. Evid. R. 404(B) provides that evidence of such crimes, wrongs or acts may be admissible for purposes other than proving the conformity of an accused with a certain character trait during the incident in question. Specifically, Evid. R. 404(B) provides the following:
 "`Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.'
"R.C. 2945.59 reads:
 "`In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, not[w]ithstanding that such proof may show or tend to show the commission of any other crime by defendant.]'" Roper at ¶ 8, reversed on other grounds, 109 Ohio St.3d 313, 2006-Ohio-2109.
 {¶ 9} We further noted that:
 "[T]the standard for determining admissibility of such evidence is strict, and the statute section and rule must be construed against admissibility. Ali, supra, citing Broom, 40 Ohio St.3d at paragraph one of the syllabus. However, this strict admissibility standard must be considered contemporaneously with the fact that the trial court `occupies a "superior vantage" in determining the admissibility of evidence' Ali, supra, citing State v. Rutledge (Nov. 19, 1997), 9th Dist. No. 96CA006619." Roper at ¶ 9.
 {¶ 10} Defendant does not dispute that the other acts at issue were committed by him. Thus, the first prong of Broom is satisfied. The following other acts evidence was admitted into evidence, over objection:
 {¶ 11} 1. Varner testified that in 2001, after she learned she was pregnant with Defendant's child, Defendant "tried to kick me down the steps" and "burned me on the neck with *Page 5 
a lighter" because "he didn't want me to have no child by him[.]" Varner further stated that she tried to defend herself by throwing "a jar of grease at him." Varner did not remember if this incident resulted in a conviction for domestic violence, but defense counsel stipulated that it did.
 {¶ 12} 2. Officer Hackathorn testified that on June 13, 2007, he and his partner saw a heated argument between a man and woman in a parking lot outside a night club. Hackathorn testified that he ran the license plates on their vehicle and it came back "with what's called a hit for a protection order attached to owner." Hackathorn stated that once they determined that the man was Defendant and the woman was Varner, they arrested Defendant for violation of the protection order. Hackathorn testified that he did not see Defendant touch or threaten Varner and that there was mutual aggression. Hackathorn finally stated that Varner appeared borderline intoxicated.
 {¶ 13} The State initially argues that Defendant forfeited his right to raise this assignment of error because he cross-examined Hackathorn and Varner about the objectionable testimony, and cites to State v.Miller (1988), 56 Ohio App.3d 130 and two other out-of-district cases that cite to Miller. The only case cited by the State from this district is State v. Wilson (Apr. 2, 1997), 9th Dist. No. 96CA006412, which held that where counsel proceeds to redirect his witness about an objectionable issue raised during cross-examination, he has waived his objection to the prosecutor's question in the context of its prejudicial nature under Evid. R. 403, not other acts evidence under Evid. R. 404(B). Similarly, neither does the holding in Miller or the other two cited cases relate to other acts evidence. Given the strict standard for the admission of other acts evidence, we decline to adopt and extend the rule of Miller to the instant case.
 {¶ 14} The State contends that the first incident is relevant to show that Defendant intended to and knowingly inflicted physical harm on Varner. The State contends that the *Page 6 
evidence was necessary because Varner was a "difficult witness for the State [and] did not wish to prosecute" Defendant. The State maintains that Varner's "testimony was pitched so that the jury might have believed that Varner was injured because she assaulted [Defendant] and that [Defendant] injured her while trying to fend her off." We agree.
 {¶ 15} It is clear that Varner did not want to prosecute Defendant and that she minimized the incident. Varner expressly stated that she "didn't want to press charges" after they "got into an argument." She indicated that she did not "even remember what it was about." She further stated that she "was drunk" but remembered them "getting into it" after which she called the police. Varner stated that she did not remember why she called the police, but that she "was upset." Varner indicated that she said "a lot of stuff on the 911 tape and indicated that when you are mad, "you say a lot of stuff. You try to get somebody in trouble." Varner stated that her eye was not blackened, but was "a little red or whatever." Varner finally testified that although the police report indicated that she told police that that Defendant choked her, he did so when they were "fighting, wrestling or whatever," and Defendant did not hold her down and choke her.
 {¶ 16} Generally, "`prior bad acts by a defendant against the same victim are * * * admissible in domestic violence cases to prove the defendant's intent[.]'" State v. Blonski (1997), 125 Ohio App.3d 103,113, quoting State v. Johnson (1994), 73 Ohio Misc.2d 1, 3. However, "[w]hen using a defendant's prior acts to show his intent, `the offense for which the defendant is being tried and the other act must have occurred reasonably near to each other and a similar scheme, plan or system must have been utilized to commit the offense at issue and the other offenses.'" State v. McCoy, 9th Dist. No. 22373, 2005-Ohio-4262, at ¶ 10, quoting Blonski at 113. We hold that the incident of Defendant's aggression against Varner in 2001 and the incident at issue here occurred "`reasonably near to each other[.]'" Blonski (1996), 125 Ohio *Page 7 
App.3d at 113. See, also, State v. Vinson, 9th Dist. No. 23849,2008-Ohio-2523, at ¶ 11 (finding no error in allowing evidence of multiple prior acts that had occurred several years prior to show intent and absence of mistake); State v. Partee, 9th Dist. No. 23643,2007-Ohio-5114, at ¶ 12 (finding no error in the admission of other acts that occurred 12 years prior); Roper at ¶ 11-12 (finding no error in the admission of other acts evidence that occurred over a span of 27 years prior to the incident at trial because "intent, purpose and knowledge are elements of several of the crimes charged," thereby making the other act evidence "particularly relevant."). The other acts testimony here shows intent and knowledge. See Id. at ¶ 13.
 {¶ 17} As to the 2007 argument in the parking lot, the State contends that testimony related to this argument between Defendant and Varner was introduced to show that Defendant had violated a protection order. The State concedes that Defendant had already pled guilty to this charge prior to trial. The State further maintains that the evidence is relevant "to show a pattern of violent behavior by [Defendant] towards Varner; again going to refute any notion that the incident on February 12, 2007, was the result of mistake or accident." We disagree. The testimony related to the June 13, 2007 incident does not demonstrate anything other than mutual aggression between the parties, that Varner had been drinking, and that Defendant violated a protection order, which he had already pled guilty to doing.
 {¶ 18} That being said, however, we find the error to be harmless given the "myriad of evidence" presented against Defendant during the trial, as will be set forth in our discussion of Defendant's second assignment of error. State v. Lyons, 9th Dist. No. 03CA0023-M,2003-Ohio-5783, at ¶ 29.
 {¶ 19} We further agree with the State that Hackathorn's testimony was not prejudicial to Defendant and was, in fact, helpful to Defendant because it demonstrated that (1) Defendant *Page 8 
denied striking Varner on February 12, 2007; (2) Hackathorn did not see Defendant strike Varner; (3) Varner smelled of alcohol thus corroborating her testimony that she drank too much; and (4) Varner and Defendant were engaged in mutual aggression.
 {¶ 20} We finally note that the trial court gave the jury limiting instructions on how they could consider the other acts evidence, and "absent evidence to the contrary, we must presume that the jury followed these instructions." State v. Bey (1999), 85 Ohio St.3d 487, 491
(holding any prejudicial impact of other acts evidence was minimized by the trial court's limiting instructions to the jury).
 {¶ 21} Defendant's first assignment of error is overruled.
 Assignment of Error II "[Defendant's] conviction was against the manifest weight of the evidence and based on insufficient evidence."
 {¶ 22} In his second assignment of error, Defendant argues that his conviction is not supported by sufficient evidence and is against the manifest weight of the evidence. We disagree.
 {¶ 23} We review a trial court's denial of a Crim. R. 29 motion by assessing the sufficiency of the evidence "to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus. To make this determination, we must view the evidence "in the light most favorable to the prosecution." Id.; State v. Feliciano (1996), 115 Ohio App.3d 646,653. "In essence, sufficiency is a test of adequacy." State v.Thompkins (1994) 78 Ohio St.3d 380, 386.
 {¶ 24} "While the test for sufficiency requires a determination of whether the [S]tate has met its burden of production at trial, a manifest weight challenge questions whether the [S]tate *Page 9 
has met its burden of persuasion." State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at *1, citing Thompkins, 78 Ohio St.3d at 390 (Cook, J., concurring). When a defendant asserts that his conviction is against the manifest weight of the evidence,
 "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
This discretionary power may only be invoked in extraordinary circumstances if the evidence presented weighs heavily in favor of the defendant. Id. As sufficient evidence is required to take a case to the jury, a conclusion that a conviction is supported by the weight of the evidence necessarily includes a finding of sufficiency. State v.Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at *2.
 {¶ 25} Based on a review of the record, this Court finds it reasonable that the jury could have believed the testimony and evidence proffered by the State and convicted Defendant of domestic violence. The jury heard the testimony of two witnesses on behalf of the State, in addition to Varner and Hackathorn. Defendant did not testify and presented no witnesses.
 {¶ 26} Defendant was convicted of domestic violence in violation of R.C. 2919.25(A), which states that, "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." Physical harm is defined as, "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3). A person acts knowingly, "regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B) *Page 10 
 {¶ 27} Despite the contentious nature of Varner's testimony, she testified that she called the police on February 12, 2007, after she got into a fight with Defendant, the father of her daughter, on Gayle Street in Akron, Ohio. Varner authenticated the tape of the telephone call to 911, which was played for the jury. On the tape, Varner spoke with a hoarse voice and told the dispatcher that Defendant jumped her causing a black eye and tried to choke her. Varner further identified her signature on the bottom of the police report, which was admitted into evidence and indicated that Defendant punched and kicked Varner in the face and back causing swelling to the left cheek. Varner also testified that on the day of the incident she went to the police station to have photographs taken of her eye and signed an application for protection order.
 {¶ 28} On cross-examination, Varner testified that she was drunk and passed out the night before and only remembers "bits and pieces." Varner admitted that she was probably still drunk when she woke up in the morning and got into a fight with Defendant. Varner maintained that she hit Defendant, but did not hit him first.
 {¶ 29} Officer James Soroky responded to Varner's call to 911 and took her statement. Soroky testified that Varner had obvious physical injuries, "most notably swelling on her left cheek." Soroky indicated that Varner told her that Defendant choked her, struck her in the face and kicked her in the back and Soroky indicated that her injuries were consistent with what Varner told him. Soroky identified the incident report and police report and indicated that he prepared the former based on what Varner told him. Soroky indicated that the report indicated that Varner told him that Defendant strangled her, punched her with a closed fist, and kicked her causing injury to the left side of her face. Soroky also identified pictures taken of Varner that show bruising and swelling under her left eye. Soroky testified that when he spoke with Varner, her voice was hoarse, which is consistent with someone who has been choked. *Page 11 
 {¶ 30} Defendant asserts that his conviction is improper for two reasons: (1) there is no evidence that Varner was injured; and (2) that is no proof Defendant knowingly caused any injury. We disagree. Varner testified at trial that Defendant hit her first. Officer Saroky testified as to what Defendant told him happened and the report, which Varner signed, supports Saroky's testimony that Defendant kicked, punched and strangled Varner. Saroky saw and testified about the injury to Varner's face and the pictures demonstrate that injury. The 911-tape also supports the incident as reported by Varner on the night in question. Moreover, Varner herself sought a protection order immediately after the incident.
 {¶ 31} Having reviewed the evidence in this case, along with the reasonable inferences that can be drawn therefrom, this Court concludes that Defendant's conviction is not against the manifest weight of the evidence. Although Varner was a reluctant witness, as the Fourth District Court of Appeals noted in State v. Sayres (Mar. 26, 1997), 4th Dist. No. 95CA30, the relationship between the parties and the witness's interest in the outcome of a case,
 "is a particularly important consideration in a domestic violence case where, for one reason or another, the victim may be reluctant to testify against a spouse, family member or other loved one. In the present case, the parties involved in the domestic violence were mother and son. It may well be that the trial testimony of Ms. Sayres was motivated by a maternal desire to protect her son. This sort of determination would have been entirely within the province of the trial court. The court was free to believe all, part or none of the testimony of each witness who appeared before it." (Internal citations omitted). Sayres at *2.
 {¶ 32} The jury was entitled to consider the relationship between Varner and Defendant, her daughter's father, when it assessed the credibility of Varner's testimony at trial versus what she told the 911 dispatch operator and the police on the night in question, the documentary evidence, including pictures, and Saroky's testimony. Based on the foregoing, we cannot say that the jury clearly lost its way in determining that Defendant inflicted or attempted to inflict physical harm upon Varner, the mother of his child. Defendant's conviction for domestic *Page 12 
violence was not against the manifest weight of the evidence. This Court, therefore, concludes that his conviction is supported by sufficient evidence. See Roberts at *2. Defendant's first and second assignments of error are overruled.
 Assignment of Error III "The court erred in allowing the playing of, and offering into evidence of, the 911 telephone call of purported victim Teliah Varner."
 {¶ 33} In his last assignment of error, Defendant argues that the trial court erred in admitting the recording of Varner's call to 911 on February 12, 2007, after he filed a motion in limine to exclude it. We disagree.
 {¶ 34} The grant or denial of a motion in limine is not a ruling on the evidence. State v. Grubb (1986), 28 Ohio St.3d 199, 200-201. Such a "ruling is preliminary, and therefore, requires a party raise specific evidentiary objections at trial so as to permit the trial court to consider the admissibility of the evidence in its actual context."Walker v. Summa Health Sys., 9th Dist. No. 23727, 2008-Ohio-1465, at ¶ 106, citing Haslam v. Russell, 7th Dist. No. 03MO3, 2008-Ohio-6724, at ¶ 51.
 {¶ 35} Here, although Defendant sought to exclude the 911 tape by motion, he did not preserve the issue by objecting to the admission of the tape at trial. Accordingly, this Court finds that Defendant has forfeited his ability to raise this issue on appeal. State v.Markovanovich, 9th Dist. No. 23572, 2007-Ohio-5676, at ¶ 11-12.
 {¶ 36} Defendant's third assignment of error is overruled.
 {¶ 37} Each of Defendant's assignments of error is overruled and the judgment of the trial court is affirmed.
 Judgment affirmed. *Page 13 
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellant.
CARR, P. J. MOORE, J. CONCUR
[1] As discussed infra, the June 13, 2007 incident was the basis for the supplemental indictment in this action for violation of a protection order, to which Defendant pled guilty. *Page 1