[Cite as *State v. Partee*, 2014-Ohio-2255.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 27083 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| ALEJANDRO M. PARTEE | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 12 10 3039 |

DECISION AND JOURNAL ENTRY

Dated: May 28, 2014

BELFANCE, Presiding Judge.

{¶1} Alejandro Partee appeals his convictions from the Summit County Court of Common Pleas. For the reasons set forth below, we affirm.

I.

{¶2} In the fall of 2012, C.B. lived with her mother and her brother, who was also Mr. Partee's son. Mr. Partee had been together with C.B.'s mother ever since C.B.'s younger brother had been born, which was approximately seven years at the time. Mr. Partee's teenage son, A.P., would often come and spend the night at the house as well. Another frequent visitor was P.M., C.B.'s friend whose mother lived nearby.

{¶3} While visiting relatives in Rhode Island in October 2012, P.M. divulged to her cousin that she had had sexual intercourse with Mr. Partee. P.M. was 13 at the time while Mr. Partee was over 40 years old. P.M.'s cousin told P.M.'s mother about the conversation, and

P.M.'s mother confronted her. P.M. admitted that she had had sex with Mr. Partee and attempted to text Mr. Partee but her mother took her phone. The drafted text was "'Hide Now[.]'"

{¶4} P.M.'s mother called P.M.'s father who was in Ohio and told him to make a police report, which he did. Detective Shandie investigated the case and, as part of his investigation, went to C.B.'s school the following Monday to talk to her about P.M.'s allegations against Mr. Partee. During the course of the interview, C.B. told Detective Shandie that Mr. Partee had had intercourse with her as well. C.B. was 12 years old when she spoke to Detective Shandie.

{¶5} Mr. Partee was indicted on one count of rape of a child under the age of 13 and one count of unlawful sexual conduct with a minor, and a jury convicted him of both counts.[1] The trial court sentenced Mr. Partee to an aggregate term of 30 years to life in prison.

{¶6} Mr. Partee has appealed, raising a single assignment of error for our review.

II.

ASSIGNMENT OF ERROR

THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT ALLOWED THE STATE TO SHOW THE VARIOUS IMAGES OF MALE GENITALIA FOUND ON APPELLANT'S PHONE WHEN THE PROBATIVE VALUE OF SUCH PHOTOGRAPH[S] DID NOT OUTWEIGH THE PREJUDICIAL VALUE OF THE PHOTOGRAPHS.

{¶7} Mr. Partee argues that the trial court committed reversible error when it permitted the State to introduce various pictures that had been discovered on his phone. We disagree.

{¶8} Generally, "we review a trial court's admission of evidence for abuse of discretion." *State v. Truitt*, 9th Dist. Summit No. 25527, 2011-Ohio-6599, ¶ 30. An abuse of discretion implies the trial court's decision is arbitrary, capricious, or unreasonable. *Blakemore*

---

[1] In a separate proceeding, the trial court also convicted Mr. Partee of a sexually violent predator specification that had been charged in a supplement indictment.

*v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). Pursuant to Evid.R. 402, relevant evidence is generally admissible. "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. However, relevant "evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Evid.R. 403(A).

{¶9} At issue in this case are five pictures that were found on his phone showing Mr. Partee's penis in varying states of arousal. Mr. Partee's primary argument is that the pictures were not relevant because they did "not tend to prove the elements of any charged offenses or the existence of any prurient interest relating directly to children." He also suggests, without fully developing an argument, *see* App.R. 16(A)(7), that the pictures were "likely to inflame the jury and unnecessarily confuse the issues at trial." However, assuming for the sake of argument that the pictures should not have been admitted,[2] we cannot conclude that their admission affected Mr. Partee's substantial rights in light of the other evidence at trial. *See* Crim.R. 52(A) ("Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded.").

---

[2] We note that the State does not attempt to explain how the pictures were relevant and instead incorrectly suggests that Mr. Partee has conceded their relevancy. At trial, it appears that the State believed that the pictures were relevant because C.B. and P.M. both testified that Mr. Partee had sent them explicit pictures. However, given that it appears that these pictures were not the pictures that had been sent to the children, their relevancy is questionable, which of course lessens their probative value pursuant to Evid.R. 403(A). Nevertheless, we do not express an ultimate opinion on these issues since we conclude that the admission of the pictures did not affect Mr. Partee's substantial rights.

{¶10} Mr. Partee was convicted of violating R.C. 2907.02(A)(1)(b) for engaging in sexual conduct with C.B. when she was less than 13 years old. "'Sexual conduct' means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex * * *. R.C. 2907.01(A). Penetration, however slight, is sufficient to complete vaginal or anal intercourse." C.B. testified that Mr. Partee had engaged in sexual conduct with her by engaging in vaginal intercourse with her and by having her perform fellatio on him. These acts all occurred when C.B. was 12 years old. A.P., Mr. Partee's teenage son, also testified that he had walked in on his father and C.B. having sexual intercourse. There were also text messages recovered from C.B.'s phone that were sent from a number associated with Mr. Partee that requested C.B. to perform fellatio on him.

{¶11} Furthermore, Melissa Wilhelm, a forensic scientist for the Bureau of Criminal Investigation (BCI), testified that she examined underwear collected from C.B. the day she had spoken to Detective Shandie and discovered trace amounts of semen in the "crotch" of the underwear. Christopher Smith, another forensic scientist at the BCI, testified that he performed DNA analysis on samples taken from C.B.'s underwear: a swabbing and two pieces cut from the underwear. Mr. Smith's testing of these samples all revealed multiple DNA profiles. The DNA profiles found during Mr. Smith's analysis of the swabbing were consistent with C.B. and Mr. Partee, and the major DNA profiles in the cuttings were also consistent with Mr. Partee. Mr. Smith testified that, based on his testing, he determined that Mr. Partee could not be excluded as a contributor of the semen found in C.B.'s underwear and, in fact, it was a near statistical certainty that Mr. Partee was the source of the semen found in her underwear.

{¶12} Mr. Partee was also convicted of violating R.C. 2907.04(A), which provides that "[n]o person who is eighteen years of age or older shall engage in sexual conduct with another,

who is not the spouse of the offender, when the offender knows the other person is thirteen years of age or older but less than sixteen years of age, or the offender is reckless in that regard." P.M. testified that, when she was 13, she had vaginal intercourse with Mr. Partee in the basement of the house he shared with C.B., her mother, and his young son. C.B. testified that she saw P.M. follow Mr. Partee to the basement one evening and that she later heard moaning coming from the basement. Furthermore, P.M.'s mother testified that, when she confronted P.M. about having sexual intercourse with Mr. Partee, P.M. started crying and attempted to text Mr. Partee "'Hide now[.]'"

**{¶13}** Mr. Partee has not explained how, given the evidence submitted at trial, his substantial rights were prejudiced by the admission of the pictures at issue in this case. C.B. and P.M. both testified about the acts and, in both cases, their testimony was corroborated by another witness. The text messages admitted at trial also support their testimony that Mr. Partee engaged in inappropriate behavior with them. In addition, pursuant to DNA testing, it was a near statistical certainty that Mr. Partee's semen was found in C.B.'s underwear. Thus, in light of Mr. Partee's limited appellate argument and the evidence at trial, we cannot say that the trial court committed reversible error by admitting the pictures. *See* Crim.R. 52(A); App.R. 16(A)(7). Accordingly, Mr. Partee's assignment of error is overruled.

III.

**{¶14}** In light of the foregoing, the judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

6

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

EVE V. BELFANCE
FOR THE COURT

WHITMORE, J.
MOORE, J.
CONCUR.

APPEARANCES:

EDDIE SIPPLEN, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.